**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| WPG SUBSIDIARY HOLDINGS I, LLC, <br><br> v. <br><br> CITY OF ELIZABETH, NEW JERSEY, <br><br> v. <br><br> GLIMCHER REALTY TRUST, N.J. METROMALL URBAN RENEWAL, INC., ELIZABETH METROMALL LLC, GLIMCHER JG URBAN RENEWAL, INC., ET AL. | Civ. No. 15-7876 (KM) (MAH) <br><br> **OPINION** |

**MCNULTY, U.S.D.J.:**

Before the Court are the following motions:

1) First motion of WPG Subsidiary Holdings I, LLC, as successor to Glimcher Realty Trust (WPG/Glimcher), to dismiss the counterclaim of the City of Elizabeth ("Elizabeth") (ECF no. 13);

2) Cross-motion and motion of Elizabeth to permit filing of proposed Amended Answer, Counterclaim, and Third-Party Complaint (ECF no. 18);

3) First motion of Third party defendants, N.J. MetroMall Urban Renewal, Inc. ("MetroMall Urban Renewal") and Glimcher JG Urban Renewal, Inc. ("JG Urban Renewal"), to dismiss the third party claim of Elizabeth (ECF no. 21).

The motion to amend is granted. The motions to dismiss are denied.

**BACKGROUND**

Because I write for the parties, I dispense with a lengthy recitation of the allegations. For purposes of the motions to dismiss, they are assumed to be true.

This action arises from an urban renewal project known as Jersey Gardens, which included a shopping center, hotel, and other commercial establishments, in Elizabeth, New Jersey. MetroMall Urban Renewal was to acquire the site; Elizabeth MetroMall LLC was to lease the site and act as redeveloper. Both of those entities were subsidiaries of Glimcher Realty Trust, the predecessor of plaintiff, which I will refer to as WPG/Glimcher.

The Redevelopment Agreement (ECF no. 1-1) contemplated that Elizabeth would impose a franchise assessment on the occupants of the project site, projected to yield at least $5.6 million annually. WPG/Glimcher provided a Guaranty (ECF no. 1-2) that the franchise assessments would be at least $4.1 million in year 1, $4.9 million in year two, and $5.6 million thereafter. Actual results, however, were disappointing. Between 2000 and 2010 WPG/Glimcher paid Elizabeth over $17 million on the Guaranty. Thereafter, however, receipts of franchise assessments allegedly did exceed the $5.6 million threshold.

WPG/Glimcher now sues Elizabeth for breach of contract. It seeks repayment of amounts paid under the Guaranty and a declaration of its entitlement to such payments. Its claim rests on a provision of the Redevelopment Agreement that requires Elizabeth to pay back Guaranty payments in amounts equal to 50% of the amount by which franchise assessments collected exceed $5.6 million per year, plus interest.

Elizabeth asserts a counterclaim against WPG/Glimcher and third party claim against Elizabeth MetroMall LLC ("Elizabeth MetroMall"), MetroMall Urban Renewal, and JG Urban Renewal (ECF no. 7) for breach of the Redevelopment Agreement and a related Financial Agreement (ECF no. 7-3). Elizabeth alleges that, as a result of unauthorized conveyances of property, insertion of new entities between itself and the project, and failures to provide annual audits, it has been denied the franchise assessments to which it is entitled. Although Elizabeth has not designated the nature of its claim, it seems to sound in breach of contract, although it also alleges circumvention of the maximum allowable profit rate permitted by the Long Term Tax Exemption Law ("LTTEL"), N.J. Stat. Ann. § 40A:20-1.

In response to WPG/Glimcher's motion to dismiss the counterclaim, Elizabeth has proffered an amended version of its Answer and Counterclaim. (ECF no. 18-1) The amended version adds five additional lines to paragraph 6 of the Counterclaim and Third Party Claim, and adds four new paragraphs, ¶¶ 36–39. Paragraph 6 alleges that WPG/Glimcher as "corporate parent" of MetroMall Urban Renewal and MetroMall LLC was responsible for their performance of the agreements; that WPC/Glimcher dominated those two entities; and that adherence to the fiction of separate corporate existence would perpetrate a fraud or injustice, in particular by permitting circumvention of the excess profits provisions of LTTEL. Elaborating, paragraph 36 states that the excess profits ceiling contained in LTTEL is the *quid pro quo* for the tax exemption enjoyed by the project. Paragraph 37 alleges on information and belief that excess profits are being earned. Paragraph 38 alleges that WPG/Glimcher formed MetroMall Urban Renewal and MetroMall LLC as a device for evasion of the limit. In particular, Metro Mall Urban Renewal is structured so that it has no net income or assets, but receives only a lease payment set to be equal to the payments it is required to make. Paragraph 39 alleges that the real profits, including excess profits, remain upstream, in MetroMall LLC, which is not an urban renewal entity. Paragraph 40 alleges that Elizabeth has been denied the audited financial statements, required by contract, that would enable it to document such profits.

**LEGAL STANDARDS**

    **A.   Motion to Amend**

A party may amend its pleading once as a matter of course within:

(A) 21 days after serving it, or

(B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under 12(b), (c), or (f), whichever is earlier.

Fed. R. Civ. P. 15(a). Accordingly, amendment of a complaint in response to a motion to dismiss is often permitted without leave of court. *See Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000).

After amending once or after an answer has been filed, however, leave of court or written consent of the opposing party is required. *Id.;* Fed. R. Civ. P. 15(a). Rule 15(a) provides that "leave [to amend] shall be freely given when justice so requires." Accordingly, the courts "have shown a strong liberality ... in allowing amendments under Rule 15(a)." *Heyl & Patterson Int'l, Inc. v. F.D. Rich Housing*, 663 F.2d 419, 425 (3d Cir.1981) (quoting 3 J. Moore, Moore's Federal Practice ¶ 15.08(2) (2d ed. 1989)).

In *Foman v. Davis*, 371 U.S. 178, 83 S. Ct. 227 (1962), the Supreme Court put its stamp on the liberal amendment policy, while identifying a number of factors relevant to a motion to amend under Rule 15(a):

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Id.* at 182, 83 S. Ct. at 230. Amendment may be denied if it would be "futile," *i.e.*, if the complaint, as amended, "would not withstand a motion to dismiss." *Massarsky v. Gen. Motors Corp.*, 706 F.2d 111, 125 (3d Cir. 1983); *see also Brown v. Philip Morris Inc.*, 250 F.3d 789, 796 (3d Cir. 2001); *Adams v. Gould Inc.*, 739 F.2d 858, 864 (3d Cir. 1984). Otherwise, "prejudice to the non-moving party is the touchstone for the denial of an amendment." *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993) (internal quotation and citation omitted). Mere passage of time, however, is not a sufficient basis for denial of a motion to amend; delay must be "undue" or prejudicial. *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001).

### B. Rule 12(b)(6) Motions to Dismiss

Rule 12(b)(6), Fed. R. Civ. P., provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In

4

deciding a Rule 12(b)(6) motion, a court must take the allegations of the complaint as true and draw reasonable inferences in the light most favorable to the plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (traditional "reasonable inferences" principle not undermined by *Twombly*, *see infra*).

Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678.

Ordinarily, review is confined to the allegations of the complaint. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) ("However, an exception to the general rule is that a 'document integral to or explicitly relied upon in the complaint' may be considered 'without converting the motion to dismiss into one for summary judgment.' ") (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir.1997)); *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

> "Although phrased in relatively strict terms, we have declined to interpret this rule narrowly. In deciding motions under Rule 12(b)(6), courts may consider "document[s] integral to or explicitly relied upon in the complaint," *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis in original), or any "undisputedly authentic document that a defendant attaches

as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document," *PBGC v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)."

*In re Asbestos Products Liability Litigation (No. VI)*, 822 F.3d 125, 134 & n.7 (3d Cir. 2016).

Here, several of the agreements—the Redevelopment Agreement, the Finance Agreement, the Guaranty—are attached to the pleadings and are integral to the allegations therein. I therefore consider them in connection with this 12(b)(6) motion.

**DISCUSSION**

    **A.    Elizabeth's Motion to Amend**

As outlined above, the standard for amendment of a pleading under Rule 15(a) is a liberal and forgiving one. I see no basis to deny Elizabeth's motion to amend its Counterclaim and Third Party Claim.

The Counterclaim and Third Party Claim is a pleading to which a responsive pleading is required. Consequently, Elizabeth would be entitled to amend as of right, without leave of Court, within 21 days after serving its unamended pleading, or within 21 days after service of a responsive pleading or motion to dismiss. Fed. R. Civ. P. 15(a)(1). In other cases, leave or consent is required.

The original Counterclaim and Third Party Claim was filed, at the latest,[1] on December 15, 2015. It has not been answered by any party.

On January 18, 2016, WPG/Glimcher moved to dismiss the Counterclaim against it. (ECF no. 13) Thirty days later, on February 18, 2016, Elizabeth moved to amend. That motion was not filed within 21 days after SPG/Glimcher's motion to dismiss. On the other hand, however, it was timely filed pursuant to the clerk's automatic extension under Local Civ. R. 7.1(d)(5). (ECF no. 16, letter from Elizabeth's counsel invoking the extension). I would, within my discretion, treat the extended deadline as applying, not just to

---

[1]    There seem to be multiple electronic filings of the same pleading. *See* ECF nos. 7, 8, 9.

Elizabeth's time to respond to the motion to dismiss, but also to Elizabeth's time to amend its pleading in response to the motion.

On February 26, 2016, MetroMall Urban Renewal and JG Urban Renewal moved to dismiss the Third Party Claim. (ECF no. 21). The amended pleading was not merely filed within 21 days after that motion to dismiss; it was filed seven days before. Under Rule 15(a)(1), then, I believe that amendment of the Third Party Claim, too, would be permissible as of right.

In the alternative, and to remove doubt, I hold that if leave to amend were required, I would grant it. The parties opposing amendment have made no demonstration as to the discretionary factors identified in *Foman v. Davis, supra*: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." There is no identifiable prejudice, in the sense that the opposing parties' having been somehow impaired in their ability to respond. Any delay was a matter of days or weeks, not months or years, and was not "undue." The amendment comes early in the case, and it was proffered promptly. No bad faith motive is suggested, and the obvious reason for the amendment appears to have been remediation of a defect identified in WPG/Glimcher's motion to dismiss.

I do not discuss futility separately, because all affected parties have moved to dismiss the Counterclaim and Third Party Claim, which they have had ample opportunity to address in its amended form. Those motions to dismiss are discussed below.

The motion of Elizabeth to amend its Answer, Counterclaim and Third Party Claim is granted, and the pleading in its amended form (ECF no. 18-1) is accepted for filing.

### B.   Motions to Dismiss the Counterclaim and Third Party Claim

The Counterclaim and Third Party Claims sound essentially in breach of contract. The elements of a breach of contract are that (1) the parties entered into a valid contract; (2) the defendant failed to perform its contractual

7

obligation; and (3) the plaintiff sustained damages as a result. *Sheet Metal Workers Int'l Ass'n Local Union No. 27, AFL-CIO v. E.P. Donnelly, Inc.*, 737 F.3d 879, 900 (3d Cir. 2013) (citing *Coyle v. Englander's,* 488 A.2d 1083 (N.J. Super. Ct. App. Div. 1985)); *Peck v. Donovan,* 565 F. App'x 66, 69–70 (3d Cir. 2012) (citing *Murphy v. Implicito,* 920 A.2d 678 (N.J. Super. Ct. App. Div. 2007)). The basic elements are obviously alleged. The relevant agreements are attached, the particular provisions relied upon are identified, and the manner in which they were allegedly breached is described.

 WPG/Glimcher first moves to dismiss because it is not a party to the Financial Agreement. The Counterclaim, however—particularly in its amended form—adequately alleges that WPG/Glimcher is contractually responsible by application of the doctrine of piercing the corporate veil.

 It is plausibly inferable from the Counterclaim that the Redevelopment Agreement and the Financial Agreement are two parts of an integrated whole. Redevelopers are induced to participate in these projects by the prospect of tax exemptions. The price of admission is acceptance of the LTTEL limits on "excess profits." The Counterclaim alleges that WPG/Glimcher created a structure that evades those limits, unfairly and in violation of public policy. The corporate form may be disregarded where a subsidiary was dominated by a parent, or to avoid fraud and injustice. *See Verni ex rel. Burstein v. Harry M. Stevens, Inc.,* 387 N.J. Super. 160, 198, 403 A.2d 475, 497 (App. Civ. 2006). The Counterclaim sufficiently alleges that WPG/Glimcher created a corporate structure to divert project income from an urban renewal entity to a non-urban renewal entity, and that WPG/Glimcher dominated its subsidiaries. Claims that Elizabeth knew about or ratified such arrangements pose factual issues that cannot be resolved on a motion to dismiss. The allegations are sufficient; proof is quite another matter, but that will have to await development of the claims in discovery.

 WPG/Glimcher, as well as MetroMall Urban Renewal and JG Urban Renewal, contend that Elizabeth lacks standing because it assigned all of its

rights under the Financial Agreement to the trustee for the Project's bondholders. Here, the payments in lieu of taxes (PILOT) were used as the basis for a bond offering. Elizabeth pledged and assigned the instalments of the PILOT and any special assessments to the bond trustee to secure payment of the bonds. (Financial Agreement § 5.2) In the Redevelopment Agreement, however, Elizabeth retained the responsibility to "collect the Franchise Assessments" ... to "enforce the payment of the Franchise Assessment" ... and to "enforce the PILOT Agreement and the Special Assessment Agreement." Redevelopment Agreement § 2.8. I do not currently rule definitively, but the language in these interrelated Agreements poses at least a factual issue requiring development in discovery. WPG/Glimcher cannot establish at the pleading stage that Elizabeth has no claim.

MetroMall Urban Renewal and JG Urban Renewal contend more generally that the Third Party Claim fails to state a claim. They offer a complex narrative, attaching multiple exhibits, and offer interpretations of the events and agreements that conflict with those of Elizabeth. Elizabeth is said to have been "on notice" of certain matters when it entered in the agreements in question, or to have "ignored" certain city ordinances. Whether or not this is a sustainable view, or a complete picture of the proceedings, I cannot judge on a motion to dismiss.

Finally, MetroMall Urban Renewal and JG Urban Renewal contend that the Third Party Claim is barred by the statute of limitations. The statute of limitations for breach of contract is six years. N.J. Stat. Ann. § 2A:14-1. "Under Fed. R. Civ. P. 8(c), the statute of limitations constitutes an affirmative defense to an action. Under the law of this and other circuits, however, the limitations defense may be raised on a motion under Rule 12(b)(6), but only if 'the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations.'" *Bethel v. Jendoco Const. Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1978) (quoting *Hanna v. U.S. Veterans' Admin. Hosp.*, 514 F.2d 1092, 1094 (3d Cir. 1975)); *Cito v. Bridgewater Twp. Police Dep't*, 892 F.2d 23, 25 (3d Cir. 1989). "If the bar is not apparent on the face of the

9

complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)." *Bethel*, 570 F.2d at 1174.

Most commonly, then, a statute of limitations issue cannot be resolved on a motion to dismiss, and this case is no exception. Certain of the acts in breach of the contract, it is true, are alleged to have occurred many years ago. It is also true, however, that the breach is alleged to be ongoing and that Elizabeth claims to have been denied required audits and required payments on an annual basis to the present day. The motion, insofar as it rests on the statute of limitations, is denied, without prejudice to reassertion of the statute of limitations on a motion for summary judgment after appropriate discovery.

## CONCLUSION

For the reasons set forth above, Elizabeth's motion to amend the Counterclaim and Third Party Claim is granted, and the two motions to dismiss it are denied. An appropriate Order follows.

Dated: July 15, 2016

_____
HON. KEVIN MCNULTY, U.S.D.J.